FILED
2013 Aug-05  PM 02:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

HARRY BRADFORD LOWBER,

     PLAINTIFF,

v.                                        CASE NO.: CV-12-J-3429-NE

W. L. HALSEY GROCERY
COMPANY,

     DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is defendant's motion for summary judgment and brief and evidence in support of said motion (docs. 26-27), to which the plaintiff filed a response (doc. 34) and the defendant thereafter filed a reply (doc. 36).

Plaintiff commenced this action by filing a complaint alleging the defendant terminated him, in violation of the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. § 12101, *et seq.,* due to his diminishing eyesight. Having considered the pleadings and the parties' submissions, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.

## **FACTUAL BACKGROUND**

The court finds the following relevant facts to be undisputed:

The plaintiff began working for defendant in August 1993. Plaintiff depo. at 38; defendant exhibit 14. The defendant is a food distributor and operates a warehouse for this purpose. Plaintiff depo. at 65. The plaintiff was hired as a router, then became an IT assistant, installing software and repairing computers. *Id*., at 118, 121. The plaintiff next worked in customer service, taking phone calls and keying orders in to a computer. *Id*., at 109-110. *See also* Affidavit of Johnia Parker, Human Resources Manager for defendant (submitted as defendant ex. B). When he began, he was able to see the computer screen. Plaintiff depo. at 111. His general manager discussed with him that his performance was falling, and plaintiff confessed to having trouble seeing the computer monitor. *Id*., at 111-112. He never requested any accommodation to help him perform the customer service position, although he tried a bigger monitor for a time. *Id*., at 114-115. However, he also told his supervisor he thought there were things, such as computer software, which could help him do the customer service job. *Id*. at 119. Because of plaintiff's failing vision, defendant created the "Clean Up Person Warehouse" position for him. Parker affidavit, at 2. Brett Posey, General Manager, by letter to plaintiff's file dated June 20, 2006, noted that

2

> Brad Lowber is struggling to produce hardly anything in the customer service department, and Brad tends to waste time roaming the halls and the warehouse....
>
> I spoke with Brad again today about his lack of production in the customer service department, and the fact that I would like to find some job that Brad can perform that will allow him to be productive.  Brad and I discussed several jobs within the company and Brad seemed to be comfortable with a position in the day warehouse department where he would be responsible for keeping up with the warehouse sanitation....

Plaintiff exhibit 1.

Thus,  beginning in 2006 until December 2011 when he was terminated, the plaintiff performed "warehouse cleanup" for defendant.  Plaintiff depo. at 78.  He earned a little less in this position than in customer service, but a supervisor told him they would figure out an hourly rate so that his income would stay about the same with overtime.  Plaintiff depo. at 127, 191; plaintiff exhibit 1.  He felt like it was a demotion because of the job status and filed an EEOC charge at that time, based on his belief that defendant was discriminating against him because of his vision.  Plaintiff depo. at 130, 185, 187; defendant exhibit 24.  The EEOC informed plaintiff that it found no evidence of wrongdoing by the defendant and the plaintiff did not pursue that charge any further.  Plaintiff depo. at 187-188.

Until his termination, the plaintiff operated an electronic tugger in the warehouse, with a trailer behind it, to collect trash cans throughout the warehouse.  Plaintiff depo. at 75, 77-78.  He also cleaned spills, cleaned out broken pallets,

3

cleaned under racks and removed empty boxes.  *Id*., at 89, 92-93.  He scrubbed floors using a scrub machine.  *Id*., at 100-102.  He never asked for any assistance in performing the clean up job, and can think of no accommodation which would have helped him in this job.  *Id.,* at 123, 172-173.

The plaintiff suffers from detached retinas in both eyes, and despite multiple surgeries, his vision has deteriorated over the years.  Plaintiff depo. at 60-63, 163-164. He stopped driving in 2006 because of his deteriorating vision.  *Id*., at 59.  He agreed he was legally blind in his left eye as of December 2011, but not in his right eye.[1]  Plaintiff depo. at 90.  However, he was diagnosed as legally blind in both eyes as of December 2011.  *Id.*, at 90.

On December 8, 2011, defendant sent plaintiff for a physical examination to Dr. James Gauthier.  Plaintiff depo. at 146.  Parker created a job description for plaintiff's duties specifically for this examination.  Parker affidavit, at 2.  According to Dr. Gauthier's records, plaintiff was referred to him for a Fitness for Duty examination due to concerns about safety.  Defendant exhibit 20.  He noted plaintiff had vision of 380/20 bilaterally, which he diagnosed as bilateral partial blindness.

---

[1]A record from the UAB Center for Low Vision Rehabilitation reflects that the plaintiff was seen on July 18, 2006 and that he was legally blind then, defined as "best-corrected visual acuity of 20/200 or less in the better seeing eye..."  Plaintiff exhibit 5.  On November 10, 2011, a record from the same UAB Center records plaintiff's vision as 20/382, and notes that he is unable to see any letters on the letter chart with his left eye, but can see light.  Plaintiff exhibit 6.

*Id.*  Dr. Gauthier opined that the plaintiff was unfit for his current position, would be unable to practice safety awareness,  and appeared to be an "imminent safety risk to himself and others."  *Id.*  Based on this, the defendant terminated plaintiff.  Parker affidavit, at 2; plaintiff depo. at 146, 157-158; plaintiff exhibit 2.

The plaintiff asserts that his only disability is his sight.  Plaintiff depo. at 146.  At the time of his termination, plaintiff states he was able to see pallets, people in the warehouse, the trash cans, and the moving forklifts.  *Id.*, at 204-205.  The plaintiff believes his "demotion" from customer service to warehouse clean up and his termination were based on discrimination due to his eyesight.  *Id.*, at 144-145.

Johnia Parker, Human Resources Manager for defendant, states other employees expressed concern for plaintiff performing his position, and therefore she arranged for plaintiff to have the fitness for duty examination.  Parker affidavit, at 2.  Steve Neeley, Operations Manager, witnessed plaintiff having trouble navigating through the warehouse and climbing up and down stairs as well as bumping into objects.  Affidavit of Neely, submitted as defendant Ex. C (doc. 27-4).

At his deposition, the plaintiff was unable to read the documents before him.  *See e.g.*, plaintiff depo. at 48, 104-105, 202.  He could not identify a woman sitting six feet from him at his deposition, nor his own attorney who was five feet from him.  Plaintiff depo. at 66, 203.

5

After his termination in December 2011, the plaintiff applied for and received unemployment compensation, certifying he was ready and able to work. Plaintiff depo. at 42, 52-53; defendant exhibit 3. He also filed a charge of discrimination with the EEOC in January 2012, in which he represented that his low vision was not a limitation on his ability to work. Plaintiff depo. at 177-178; defendant exhibits 21 and 22. The EEOC concluded that the evidence did not substantiate that the plaintiff was subjected to discrimination because his employer saw him having difficulty negotiating his way around the warehouse, bumping into items, and struggling to operate equipment. Defendant exhibit 23. In July 2012 he applied for Social Security Disability benefits due to his eyesight, alleging an inability to work beginning December 9, 2011. Defendant exhibit E; plaintiff depo. at 41-43. He was awarded disability benefits, with the same beginning in June 2012. Plaintiff depo. at 44, 50; defendant exhibit F.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the

outcome of the case. It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005).

7

# LEGAL ANALYSIS

## A.  Discrimination Claims

The plaintiff brings an ADA claim for discrimination based on the above set of facts.  The ADA provides that no covered employer shall discriminate against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a prima facie case under the ADA, the plaintiff must show that (1) he has, or is perceived to have, a disability; (2) he is a qualified individual "which is to say, able to perform the essential functions of the employment position that he holds ... with or without reasonable accommodations; and (3) he was discriminated against because of the disability." *Carruthers v. BSA Advertising, Inc*., 357 F.3d 1213, 1215 (11th Cir.2004) (quoting *Williams v. Motorola, Inc*., 303 F.3d 1284, 1290 (11th Cir.2002).  *See also Greenberg v. Bellsouth Telecomms., Inc*., 498 F.3d 1258, 1263 (11th Cir.2007).  The plaintiff must also show that the employer was aware of, meaning had "actual knowledge" of the disability and that the unfavorable employment decision was due to, or because of, the disability. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1183 (11th  Cir.2005), citing *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001); *Brungart v. BellSouth Telecomm., Inc*., 231 F.3d

791, 800 (11th Cir.2000).

The parties do not dispute that the plaintiff has a disability.  They do dispute whether the plaintiff is a "qualified individual" as that term is defined by the ADA, specifically, whether he was able to perform the specific job functions with or without reasonable accommodations.  42 U.S.C. § 12111(8); *Davis v. Fla. Power & Light, Co.*, 205 F.3d 1301, 1305 (11th Cir.2000).  An employer may apply its judgment in determining what job functions are essential.  *See* 29 C.F.R. § 1630.2(n)(3).

The defendant argues that because the plaintiff presented a "direct threat" within the work environment, he cannot be considered a "qualified individual."  The Eleventh Circuit has so held.  *See e.g. Pinckney v. Potter,* 186 Fed.Appx. 919, 926, 2006 WL 1760400, *6 (11th Cir.2006) (noting that an individual is not a "qualified individual" if, by performing the duties of a given position, he would pose a "direct threat" to himself and that regulations extended the definition of "direct threat" in 42 U.S.C. § 12111(3) to include threats to the worker himself).  The plaintiff responds that whether an individual presents a direct threat to himself is not within the consideration of whether he is a "qualified individual."  However, the Ninth Circuit case the plaintiff cites in support of this proposition, *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063, 1071 (9th Cir. 2000) was reversed by the Supreme Court on this very issue.  *See Chevron USA, Inc. v.Echazabal*, 536 U.S. 73, 122 S.Ct. 2045 (2002).

9

Specifically, the Supreme Court stated:

> A regulation of the Equal Employment Opportunity Commission authorizes refusal to hire an individual because his performance on the job would endanger his own health, owing to a disability. The question in this case is whether the Americans with Disabilities Act of 1990, 104 Stat. 328, 42 U.S.C. § 12101 *et seq*. (1994 ed. and Supp. V), permits the regulation. We hold that it does.

*Chevron U.S.A. Inc. v. Echazabal,* 536 U.S. 73, 76, 122 S.Ct. 2045, 2047 (U.S.2002).

In so holding, the Supreme Court implicitly affirmed *Moses v. American Nonwovens, Inc.*, an Eleventh Circuit case with a similar issue.[2]  There, the Eleventh Circuit held

> An employer may fire a disabled employee if the disability renders the employee a "direct threat" to his own health or safety. 42 U.S.C. §§ 12113(a), (b); see also 29 C.F.R. § 1630.2(r). But there is no direct threat defense if the employer could have made "reasonable accommodation[s]." 42 U.S.C. 12113(a). The employee retains at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available. *See Benson v. Northwest Airlines, Inc*., 62 F.3d 1108, 1112 (8ᵗʰ Cir.1995) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-13, 113 S.Ct. 2742, 2747-50, 125 L.Ed.2d 407 (1993)).

*Moses v. American Nonwovens, Inc.*,  97 F.3d 446, 447 (11ᵗʰ Cir.1996).  *See also*

*Owusu-Ansah v. Coca-Cola Co.*,  715 F.3d 1306, 1311 (11ᵗʰ Cir.2013) (holding that

"the ADA does not, indeed cannot, require [an employer] to forgo a fitness for duty

examination to wait until a perceived threat becomes real or questionable behavior

---

[2]In fact, the Supreme Court mentioned in its opinion that it accepted the Ninth Circuit case for review because it directly conflicted with the Eleventh Circuit case of *Moses v. American Nonwovens, Inc.*, 97 F.3d 446 (11ᵗʰ Cir.1996).

results in injuries.").

Plaintiff has provided the court with no evidence tending to contradict that he was a direct threat to himself and/or others.  The defendant terminated the plaintiff due to concerns about his failing eyesight.  It sought medical confirmation as to the extent of the limitation of plaintiff's eyesight, and believed the medical evidence to be accurate, regardless of plaintiff's testimony now as to what he could or could not see in December 2011.  In fact, the Social Security Administration awarded the plaintiff disability benefits, beginning in June 2012, based on plaintiff's representation that he became unable to work as of December 2011.  Thus, defendant is entitled to prevail on its motion for summary judgment solely on this ground.

Yet, there is an even more basic reason why summary judgment is due to be granted in defendant's favor.  In order to be a "qualified individual," the plaintiff must be able to work with or without accommodation.  *See e.g., Reed v. Heil*, 206 F.3d 1055, 1062 (11th Cir.2000).  The plaintiff did not seek, and does not argue now that he sought any accommodations to perform his job.   Rather, he states he could perform his duties without any accommodations, although he also represented to the Social Security Administration that he was completely disabled as of the date of his termination.  Faced with a similar issue, the Supreme Court held:

An ADA plaintiff bears the burden of proving that she is a "qualified

individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

The lower courts, in somewhat comparable circumstances, have found a similar need for explanation. They have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity. Although these cases for the most part involve purely factual contradictions (as to which we do not necessarily endorse these cases, but leave the law as we found it), we believe that a similar insistence upon explanation is warranted here, where the conflict involves a legal conclusion. When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805–07, 119 S.Ct. 1597, 1603–04 (1999) (citations omitted).

Courts have interpreted *Cleveland, supra*, to require a careful examination of the factual record to determine whether the plaintiff has offered a satisfactory

12

explanation for the apparent contradiction between an application for disability benefits and an ADA claim. *See e.g., Talavera v. Sch. Bd. of Palm Beach Cnty.*, 129 F.3d 1214, 1220 (11th Cir.1997)*. See also McClaren v. Morrison Management Specialists, Inc.,* 420 F.3d 457, 463 (5th Cir.2005); *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir.2001). "[T]hat explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of her job, with or without reasonable accommodation." *Cleveland*, 526 U.S. at 807, 119 S.Ct. 1597 (internal quotation marks omitted). If a plaintiff fails to explain the inconsistency between his qualification and disability, or if the explanation is insufficient, then his ADA claim is judicially estopped by his earlier statements regarding disability. *Id; Talavera,* 129 F.3d at 1220 ("The burden faced by ADA claimants in this position is, by their own making, particularly cumbersome, for summary judgment should issue unless there is strong countervailing evidence that the employee ... is, in fact, qualified.").

Turning to this apparent factual conflict before the court, in support of his motion for summary judgment, the plaintiff testified in his deposition that as of December 9, 2011, he was able to perform his job with no accommodations.  Plaintiff depo. at 123, 172-173.   However, he also represented to the Social Security

Administration that as of December 9, 2011, he was completely and totally disabled from performing any job. [3]  Plaintiff depo. at 41-43; defendant exhibit E.  These two representations cannot be reconciled.[4]   As noted by the Seventh Circuit, this is "exactly the sort of factual contradiction that *Cleveland* forbids." *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390, 392 (7th Cir.2005); citing *Cleveland*, 526 U.S. at 806.

 The *Opsteen* Court continued:

> Opsteen wants to have things two ways, depicting himself as mentally incompetent in order to obtain disability benefits but as mentally capable in order to secure employment. He has not informed the Social Security Administration of his new position, nor has he asked the SSA and the ERISA plan to stop paying benefits. Instead he seeks to maintain both gloomy and optimistic medical evaluations at the same time, and to benefit from different sources based on these incompatible positions. *Cleveland* holds that courts need not tolerate this maneuver. *See also Lee v. Salem*, 259 F.3d 667, 673–74 (7th Cir.2001). Litigants who take one view of the facts, and prevail, are equitably estopped to assert the opposite later. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

*Opsteen v. Keller Structures, Inc.*, 408 F.3d 390, 392 (7th Cir.2005).

---

[3]Plaintiff's argument that his disability benefits did not begin until June 2012 and thus there is no contradiction reveals a fundamental misunderstanding of the holding of *Cleveland*.  In his July 2012 application for benefits, the plaintiff stated he "became unable to work because of my disabling condition on December 9, 2011."  Defendant's exhibit E.  He certified the same was true under penalty of perjury. *Id*. The plaintiff also received Unemployment Compensation during this time period, beginning in January 2012 and continuing through July 2012.  *See* defendant exhibit 3 to plaintiff deposition.

[4]Similarly, the plaintiff admits in his deposition that his eyesight has continued to deteriorate, yet seeks compensation based on an assumption that he would work for twenty years.  Plaintiff depo. at 197.

The Eleventh Circuit has echoed this sentiment. In *Kurzweg v. SCP Distributors, LLC*, the court considered a factual basis similar to the one before this court, noting:

> Here, Kurzweg's statements to the SSA were inconsistent with his ADA claim. The SSA sent Kurzweg a March 3, 2009 application summary that contained a summary of Kurzweg's statements to the SSA used to complete his electronically stored SSDI application. According to the summary, Kurzweg stated, inter alia, "I became unable to work because of my disabling condition on June 9, 2008," and he "affirm[ed] that all information I have given in connection with this claim is true." Kurzweg, who was represented by an attorney in the SSA proceedings, does not appear to have done anything to correct the onset date. The SSA's subsequent favorable decision states that Kurzweg was "alleging disability since June 9, 2008."
>
> Furthermore, Kurzweg's explanation for his inconsistent representations does not fall within any of the examples listed in *Cleveland*. Kurzweg did not argue that he needed a reasonable accommodation to do his job for SCP. In fact, he claimed he was fully able to do his job on June 9, 2009, stressing that his doctor had released him to return to work without restrictions. Kurzweg did not contend his impairments met or equaled an impairment listing or that he was in a nine-month trial-work period. Instead, Kurzweg essentially argued that the SSA erroneously (and without his objection) used his termination date, when in fact he was fully able to do his job on that date and that the real onset date occurred sometime after he learned he had been terminated and became severely depressed. We agree with the district court that Kurzweg's explanation does not reconcile the inconsistency in his representations before the SSA and in this ADA action.
>
> Kurzweg successfully maintained before the SSA that he was unable to do his past relevant work (i.e., his work at SCP) as of June 9, 2008 due to his disability. Therefore, Kurzweg is estopped from asserting in this ADA action that he was able to perform the essential functions of his job

at SCP on June 9, 2008, when SCP terminated him. Accordingly, the
district court properly granted SCP's motion for summary judgment.

*Kurzweg v. SCP Distributors, LLC,* 424 Fed.Appx. 840, 844, 2011 WL 1519105, *3

(11th Cir.2011).  Because the plaintiff is estopped from asserting he was to perform

his job – with or without accommodation – as of December 9, 2011, the defendant is

entitled to summary judgment in its favor on the plaintiff's claim of discrimination

under the ADA.

The plaintiff next argues that he was denied a reasonable accommodation in

2006, when he informed his supervisor that he was having trouble seeing the

computer monitor.  This claim is foreclosed.  The plaintiff raised his removal from

customer service in a 2006 EEOC charge and failed to take any further action on that

claim when the EEOC issued his Notice of Right to File Suit.  Plaintiff depo. at 187-

188.  Once a plaintiff has received notice that the EEOC has dismissed the charge, he

has 90 days to file suit.  *See* 42 U.S.C. § 12117(a) (applying Title VII procedural

requirements to ADA claims); 42 U.S.C. § 2000e-5(f)(1) (stating an aggrieved person

has ninety days to file suit from the time of notification by the EEOC that it will not

pursue the claim).  *See also Bryant v. U.S. Steel Corp.*, 428 Fed.Appx. 895 (11th

Cir.2011); *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir.1999). The

Eleventh Circuit strictly enforces the ninety-day deadline.  *See e.g., Ingmire v. Target*

*Corp.*, 2013 WL 2338235 (11th Cir.2013); *Stallworth v. Wells Fargo Armored Services Corp.*, 936 F.2d 522, 524 (11th Cir.1991).  This time long ran before this action was filed, approximately six years after the factual basis for plaintiff's failure to accommodate claim arose.  Hence, plaintiff's failure to adhere to the filing deadlines requires dismissal of the untimely claim.  *See e.g., Miller v. Georgia*, 223 Fed.Appx. 842, 845 (11th Cir.2007), citing *Stallworth,* 936 F.2d at 524.

## B.  Retaliation Claims

The plaintiff alleges the defendant retaliated against him because of his disability through disparate treatment, including a random drug test.  In his complaint, the plaintiff alleges these actions, plus his removal from Customer Service to the warehouse, were in retaliation for his requests for reasonable accommodations, such as computer software.  As previously discussed, the move from Customer Service to the warehouse occurred in 2006, and any claims arising from that transfer are time-barred.  The plaintiff's argument otherwise is both vague and disingenuous.  Plaintiff argues that "after he informed Brett Posey of possible customer service accommodations, he was nonetheless demoted to the warehouse clean-up position..." Plaintiff's response, at 23-24.

To establish a prima facie case of retaliation, the plaintiff must show that she (1) engaged in protected activity; (2) an adverse employment action occurred; and (3)

a causal connection between the protected activity and the adverse employment action

exists.[5]  *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th

Cir.1999).  *See also Gupta v. Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)

(abrogated on other grounds, *Crawford v. Carroll,* 529 F.3d 1961 (11th  Cir.2008)).

The plaintiff fails to allege any protected activity within any logical time frame of his

termination.  He also fails to allege any protected activity prior to his reassignment

to the warehouse.

   The plaintiff possibly argues that the plaintiff asking for an accommodation in

2006 was the protected activity.  Assuming this is indeed what the plaintiff argues,

the court cannot find a causal connection between that activity and his termination in

2011.  To establish a causal connection, the plaintiff may show a "close temporal

proximity" between the his protected activity and adverse actions. *Brungart v.

BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th  Cir.2000).  If plaintiff

is arguing that his reassignment to the warehouse from Customer Service was in

retaliation for his request for accommodation of some sort while working in Customer

Service, he is more than five years too late to bring that claim, as explained above.

---

   [5]Because the ADA's prohibition of retaliation is similar to the prohibition contained in
Title VII, the court "assess[es] ADA retaliation claims under the same framework employ[ed] for
retaliation claims arising under Title VII." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117
F.3d 1278, 1287 (11th Cir.1997).

*See also, Henderson v. FedEx Express*, 442 Fed.Appx. 502, 506 (11th Cir.2011) (six months gap is too long); *Brown v. Alabama Dept. of Transp.*, 597 F.3d 1160, 1182 (11th Cir.2010) (three months is too long); *Jiles v. United Parcel Service, Inc.*, 360 Fed.Appx. 61, 67 (11th Cir.2010) (eight months is too long); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) ("three to four month disparity between the statutorily protected expression and the adverse employment action is not enough");

Although the plaintiff argues the adverse actions were part of a "continuing violation," he does not allege any factual basis for the court to find a continuing violation.[6] At best, the plaintiff alleges that he requested an accommodation in 2006 prior to his transfer to the warehouse. Assuming he did so, assuming that request was denied, and assuming his transfer to the warehouse was in retaliation for his request for accommodation, the same sequence of events was completed upon his transfer.

---

[6]The plaintiff makes passing references to his selection for a random drug test in 2011 as evidence of the alleged continuing retaliation or discrimination. However, plaintiff does not actually argue the same in his response to the motion for summary judgment and any such argument is therefore waived. *See e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587 (11th Cir.1995) (grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned). Additionally, while the plaintiff argues his selection for the same was in December 2011, he does not allege that the same was actually adverse, such as that he failed it, was not paid for the time it took him away from work, or any other consequence of the same. Even more problematic, the only documentary evidence related to any drug testing bears the date of "4/8," with the remainder of the document being illegible. *See* plaintiff exhibit 3. By affidavit, Johnia Parker states the plaintiff, along with three other employees, were randomly selected and tested on April 8, 2011. Defendant exhibit B.

## V. CONCLUSION

Having considered the foregoing, and being of the opinion that the defendant's motion for summary judgment is due to be granted on all of the plaintiff's claims, the court shall grant said motion by separate Order.

**DONE** and **ORDERED** this the 5th day of August, 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE